STATE EX REL. GARNER, Petitioner, v. GRAY, Warden, Respondent.

*No. State 34. Argued September 12, 1972.—Decided October 5, 1972.*
(Also reported in 201 N. W. 2d 163.)

576

For the petitioner there were briefs and oral argument by *James H. McDermott*, state public defender.

For the respondent the cause was argued by *William A. Platz*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

WILKIE, J. Petitioner raises various objections to the procedure followed here and to the papers filed, contending noncompliance with the provisions of the Uniform Detainer Act, sec. 976.05, Stats. Petitioner alleges six distinct instances of noncompliance:

1. The detainer was filed by the Chicago police department rather than the correct party, the Cook county state's attorney (or his assistants acting for him).

2. There was a premature honoring of the Illinois temporary custody request.

3. There is a lack of judicial "approval" of the temporary custody request.

4. There is an inference that the Illinois detainer filed in October, 1971, was no longer on file at the time of the Illinois state's attorney's request for temporary custody.

5. Wisconsin authorities failed to furnish the authorities of Illinois with copies of the certificate of inmate status.

6. The Illinois complaint and arrest warrant are defective.

Before considering any of petitioner's objections to the procedure followed here, it is first necessary to consider the two issues raised by petitioner's constitutional challenges to the provisions of the Uniform Detainer Act, under which the Illinois authorities seek the delivery of petitioner.

## Issues.

1. Are any of the provisions of the Uniform Detainer Act subject to constitutional challenge?

2. Is petitioner entitled to a hearing wherein he may contest the legality of his impending delivery to Illinois?

## Constitutional challenge.

Petitioner urges due-process and equal-protection constitutional challenges to the Uniform Detainer Act. Specifically, as to the violation of petitioner's right to due process, petitioner argues that while the Uniform Detainer Act allows him to seek, by motion, to have the governor of this state disapprove a request for temporary custody, there is no provision in the act which assures him of being notified of this right. For example, there is no provision which assures prompt notice to a prisoner of a detainer which has been lodged against him. Indeed, asserts petitioner, there is no provision at all which requires the warden or anyone else to inform him of his right to petition the governor.[1] This deficiency, according to petitioner, is violative of his right to due process.

---

[1] There is some question as to whether petitioner was informed of his right to petition the governor. The record does indicate he was informed of the detainer.

Contending a denial of equal protection, petitioner compares the Uniform Detainer Act to the Uniform Criminal Extradition Act, which has also been adopted in this state.[2] He argues that under the extradition act there is a right of a person sought to be extradited to be advised by a court of record of his rights under the extradition act. He asserts that no such advice is required by the detainer act. This difference between the two acts, he asserts, gives rise to an arbitrary and irrational classification among Wisconsin prisoners who may be sought by out-of-state authorities under one act rather than the other.

Art. IV (a) of the Uniform Detainer Act provides a thirty-day period after receipt of a temporary custody request during which the prisoner sought may petition the governor of the sending state to deny the request.[3] The act elsewhere requires the warden of an institution confining the prisoner to "promptly" notify him of any detainer which is lodged against him and of his right to request final disposition of the indictment, information or complaint upon which the detainer is based.[4] Crucially, the Uniform Detainer Act nowhere mandates the warden to inform a prisoner of his right to either petition the governor to deny his custody release, or to seek

[2] Sec. 976.03, Stats. This Uniform Act became effective July 1, 1970.

[3] Sec. 976.05, Art. IV (a), Stats.: ". . . there shall be a period of 30 days after receipt [of the custody request] by the appropriate authorities before the request is honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."

[4] Sec. 976.05, Art. III (c), Stats.: "The department, or warden, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based."

legal relief challenging his custody transfer. A warden must only inform a prisoner of his right to request final disposition, thereby waiving extradition and consenting to the production of his body in another state's court for purposes of further prosecution.[5] However, the act does state that nothing therein contained shall be construed to deprive a prisoner of any right he may have to contest the legality of his delivery.[6]

It is petitioner's basic position that this act does not protect his right to timely petition the governor to deny the custody request or to bring a habeas corpus writ challenging his impending transfer.

Some of these same objections were raised in *King v. State*,[7] wherein the Maryland Court of Special Appeals condemned the Uniform Detainer Act for not including sanctions assuring compliance by the various authorities with the act's provisions. Thus, according to the Maryland court, there was nothing in the act compelling the warden's prompt action upon a prisoner's request for prompt disposition provided for in art. III.[8] As well, there is no provision requiring the prompt notification by correctional officials of detainers lodged against a prisoner to the warden of an institution. Thus the warden cannot in his turn "promptly" inform the prisoner thereof as he is required under art. III (c).

In the instant case (same act with minor variations) there is nothing in the Uniform Detainer Act mandating even the warden of an institution (as distinguished from a judge) to inform the prisoner of his right to petition the governor or bring a writ of habeas corpus to contest his custody transfer.

---

[5] *See* sec. 976.05, Art. III (e), Stats.

[6] Sec. 976.05, Art. IV (d), Stats.

[7] (1969), 5 Md. App. 652, 658, 249 Atl. 2d 468.

[8] The problem in *King* predominantly involved the speedy trial provisions of the Uniform Detainer Act.

The state argues there is no due-process violation herein as it is currently the practice under the act to inform a prisoner of the existence of a detainer or custody request for him and of his right to petition the governor. Indeed, the state suggests, the Handbook on Interstate Crime Control states that signed copies of the request for temporary custody must be sent to the prisoner. The state also notes a decision in the circuit court for Dodge county requiring timely notice to a prisoner of his right to petition the governor. Finally, the state notes several cases which suggest a prisoner has no inherent right to "complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it." [9] Therefore, argues the state, the only rights a prisoner has to contest his delivery to another state are those granted him by statute. The state apparently feels a prisoner has no right to be *informed* of his rights of petition and habeas corpus when the statute merely gives him those rights.

The state's argument, however, overlooks several established constitutional doctrines. The first is that a statutorily given right, albeit not constitutionally required, cannot be arbitrarily denied.[10] The second doctrine is that of the existence of a right necessarily implying the notification thereof.[11] The one without the other is as meaningless as having the right to an attorney or to

[9] *Ponzi v. Fessenden* (1922), 258 U. S. 254, 260, 42 Sup. Ct. 309, 66 L. Ed. 607.

[10] *American Railway Express v. Kentucky* (1927), 273 U. S. 269, 273, 47 Sup. Ct. 353, 71 L. Ed. 639; *Truax v. Corrigan* (1921), 257 U. S. 312, 329, 42 Sup. Ct. 124, 66 L. Ed. 254; *see also: Rudder v. United States* (D. C. Cir. 1955), 226 Fed. 2d 51.

[11] *See generally, Miranda v. Arizona* (1966), 384 U. S. 436, 467–479, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694; *United States ex rel. Singleton v. Woods* (7th Cir. 1971), 440 Fed. 2d 835.

appellate review without having the right to be notified thereof.[12]

We conclude that the Uniform Detainer Act fails to protect adequately a prisoner's right, granted in the act, to petition the governor or seek a writ of habeas corpus by failing to mandate notification of these rights to the petitioner. This is a violation of the procedural due-process requirements of the state and federal constitutions.[13] The state argues that because the practice is generally to give notice of rights to prisoners there is no constitutional defect. This court has held that in construing a statute the court "must ascertain the legislative intention as disclosed by the language of the statute in relation to its scope, history, context, subject matter, and the object intended to be remedied or accomplished."[14] This court has also stated recently that "[t]he meaning of a legislative act must be determined from what it says."[15]

The prevailing practice with respect to informing prisoners of their rights is not a relevant consideration in determining the constitutional validity of an act. In the instant situation a serious question exists as to whether the petitioner was informed of his right to contest the validity of his custody transfer. This court has held a statute may be construed to require elements which

---

[12] *Peterson v. State* (1972), 54 Wis. 2d 370, 382, 195 N. W. 2d 837.

[13] This court has held the United States and Wisconsin Constitutions to be similar with respect to the due-process and equal-protection clauses. *Boden v. Milwaukee* (1959), 8 Wis. 2d 318, 324, 99 N. W. 2d 156; *Lathrop v. Donohue* (1960), 10 Wis. 2d 230, 235, 102 N. W. 2d 404.

[14] *Scanlon v. Menasha* (1962), 16 Wis. 2d 437, 442, 114 N. W. 2d 791.

[15] *A. O. Smith Corp. v. Department of Revenue* (1969), 43 Wis. 2d 420, 427, 168 N. W. 2d 887.

may have been omitted.[16] Thus, we construe the Uniform Detainer Act to require advice to a prisoner of his various rights. Receipt here by Garner of a copy of his detainer was not enough. The statute must be construed to require that he be notified of his right to contest his delivery under that detainer either by petitioning the governor or by going to court.

Asserting a denial of equal protection, petitioner also argues that he has been arbitrarily denied certain rights because the Illinois authorities have chosen to proceed under the Uniform Detainer Act rather than the Uniform Criminal Extradition Act. The extradition act provides:

"(10) RIGHTS OF ACCUSED; APPLICATION FOR WRIT OF HABEAS CORPUS. No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state." [17]

There are no comparable provisions in the Uniform Detainer Act providing for (1) judicial notification of a custody demand, (2) judicial notification of the right to procure counsel, (3) the setting of a reasonable time to

[16] *Huebner v. State* (1967), 33 Wis. 2d 505, 524–529, 147 N. W. 2d 646.

[17] Sec. 976.03 (10), Stats.

apply for a writ of habeas corpus, or (4) the right to a hearing upon the habeas corpus.

Petitioner argues that the Uniform Detainer Act has created an arbitrary and irrational classification of Wisconsin prisoners who are sought by out-of-state authorities. That classification depends wholly upon which act is proceeded under by the out-of-state authorities.

The United States Supreme Court has long condemned arbitrary statutory classifications.[18]

In the recent case of *Baxstrom v. Herold*,[19] the United States Supreme Court found a denial of equal protection in a statutory procedure wherein a person could be civilly committed at the end of a prison sentence without the jury trial necessary for commitment of those not formerly imprisoned. The court held:

". . . Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made."[20]

So also in the recent *Humphrey v. Cady*[21] decision the supreme court held:

". . . The equal protection claim would seem to be especially persuasive if it develops on remand that petitioner was deprived of a jury determination, or of other procedural protections, merely by the arbitrary decision of the state to seek his commitment under one statute rather than the other."[22]

This court has also addressed itself to the equal-protection clause holding the essential determination to be whether there was an "arbitrary discrimination" either

---

[18] *See Skinner v. Oklahoma* (1942), 316 U. S. 535, 62 Sup. Ct. 1110, 86 L. Ed. 1655.

[19] (1966), 383 U. S. 107, 86 Sup. Ct. 760, 15 L. Ed. 2d 620.

[20] *Id.* at page 111.

[21] (1972), 405 U. S. 504, 92 Sup. Ct. 1048, 31 L. Ed. 2d 394.

[22] *Id.* at page 512.

in the statute itself or its application.[23] In *Huebner* this court stated:

".. . While equal protection does not require all persons to be treated in the same manner, the distinction must have some relevance to the purpose of the classification." [24]

In the instant situation there are very real and important differences in the statutory rights to be accorded a sought-after prisoner depending upon which act is utilized by out-of-state authorities. There is no rational basis for the distinction. The prisoner who is sought under the Uniform Criminal Extradition Act is accorded the rights to be informed of the custody request and his rights by a judge of a court of record. The prisoner who happens to be sought under the Uniform Detainer Act does not have this right to a judicial notification of the detainer and rights under the act. Indeed, under the act itself, he is not even entitled to notification of his right to seek a writ of habeas corpus. The classification made between Wisconsin prisoners is irrational, arbitrary and unreasonable.[25]

In oral argument the state contended that the extradition act is usually utilized where the person sought is not in custody. The detainer act, on the other hand, expressly provides that it is to be utilized "whenever a person has entered upon a term of imprisonment." [26] The two acts, however, are not mutually exclusive. The extradition act contains a section relating to persons who

[23] *State ex rel. Murphy v. Voss* (1967), 34 Wis. 2d 501, 510, 149 N. W. 2d 595; *State ex rel. Schopf v. Schubert* (1970), 45 Wis. 2d 644, 173 N. W. 2d 673.

[24] *Huebner v. State, supra,* footnote 16, at page 528.

[25] *State ex rel. Schopf v. Schubert, supra,* footnote 23, at page 651.

[26] Sec. 976.05, art. III (a), Stats.

are imprisoned or awaiting trial.[27]   There is no basis provided in either act relating to the reasons for its use in the instance of persons who are incarcerated.  That determination seems to depend entirely upon "the arbitrary decision of the state" [28] to seek his custody under one statute rather than the other.

The Uniform Detainer Act, by not requiring a judicial hearing wherein a prisoner who is sought thereunder is explained his right to petition the governor or to bring appropriate challenging legal action, is constitutionally defective under the equal-protection clause of the United States and Wisconsin Constitutions.

### Petitioner's right to a hearing.

A hearing procedure similar to that provided for in the Uniform Criminal Extradition Act would serve to cure both the due-process and equal-protection defects of the Uniform Detainer Act.

The extradition act provides that no person arrested shall be delivered unless "he shall first be taken forthwith before a judge of a court of record in this state." [29] The act continues, enumerating the information which the judge must give the sought-after party.

By affording prisoners sought by out-of-state officials under the Uniform Detainer Act this same type of a hearing or judicial advisement of rights, the due-process defect regarding notice of detainer and rights under the act is cured.  The equal-protection defect is also cured in that there no longer is an arbitrary distinction existing among Wisconsin prisoners resulting from out-of-state authorities proceeding under one act rather than the other.

---

[27] Sec. 976.03 (5) (a), Stats.

[28] *Humphrey v. Cady, supra,* footnote 21, at page 512.

[29] Sec. 976.03 (10), Stats.

In *Huebner v. State* [30] this court required a hearing on the issue of the necessity for specialized treatment under the Sex Crimes Act. That hearing was required in order to save the constitutionality of that act as against the charge that the alleged sex deviate was not afforded due process and was denied equal protection. In *Huebner* the court prescribed the required hearing as follows:

". . . We hold that when a person is convicted of a sex crime and subject to a presentence social, physical and mental examination and the report of the department recommends specialized treatment, that before a court can place such person on probation in the department with treatment or commit him to the department for treatment under sec. 959.15 (6), Stats., he shall be afforded a hearing on the issue of the need for specialized treatment for his mental or physical aberrations unless such hearing is expressly waived by him. The defendant shall be afforded such hearing with counsel, process to compel attendance of witnesses, production of evidence, an examination by a doctor or psychiatrist of his own choosing, and if he is unable to provide counsel, he shall have counsel appointed for him at public expense . . . ." [31]

A hearing, not as provided in *Huebner,* but along the lines of that provided in the Uniform Criminal Extradition Act, must be held. The hearing prescribed in *Huebner* is unnecessary since petitioner's rights under the detainer act include the right to bring a writ of habeas corpus. When such writ is brought, a full hearing by a court of record (in the county of the prisoner's incarceration) would be had. It would be duplicitous to provide a *Huebner* type of hearing when the prisoner is expressly afforded a right to challenge the validity of his impending transfer in the detainer act itself. [32]

---

[30] *Supra,* footnote 16.

[31] *Id.* at pages 528, 529.

[32] Sec. 976.05, Art. IV (d), Stats.

We therefore require, as to the delivery of any persons sought by out-of-state officials under the Uniform Detainer Act, that they be afforded a type of hearing as prescribed by sec. 976.03 (10) of the Uniform Criminal Extradition Act, at which hearing a prisoner sought to be delivered may be advised by a judge of the court of record of the existence of the detainer and his various rights under the detainer act.

As to the instant petitioner, the ordered hearing is unnecessary as petitioner already has an attorney, is advised of his rights, and has launched specific objections to the custody transfer. At this point we cannot consider any of the alleged instances of noncompliance with the requirements of the Uniform Detainer Act. There must be a fact-finding hearing on the facts pertinent to petitioner's challenges of the custody transfer. For this reason we must refer the petition and answer, as amended, to the circuit court for the county wherein he is currently incarcerated to hold such a hearing and to make findings of fact prior to a determination by this court of the legal questions involved in the petition and amended answer.[33]

*By the Court.*—The matter is referred to the Honorable HENRY G. GERGEN, JR., Circuit Judge of the Thirteenth Judicial Circuit, for fact finding in connection with the allegations in petitioner's petition and the answer thereto as amended, which findings shall be filed with this court on or before forty days after this order becomes final. The appointment of the state public defender as counsel for the petitioner is continued for the purpose of these proceedings and the temporary injunction herein is continued until further order of the court.

ROBERT W. HANSEN, J. (*dissenting*). The court majority examines the Uniform Detainer Act, adopted in

[33] This was recently done in *State ex rel. Schopf v. Schubert, supra,* footnote 23, at page 655.

thirty-nine jurisdictions,[1] and finds three flaws in the fabric, each of constitutional proportions. The three imperfections are asserted to be: (1) Lack of adequate notice; (2) denial of equal protection; and (3) lack of due process. Each is discussed in turn.

I. *Lack of notice.*

The challenge on the ground that notice to the prisoner is not adequately required is to the law on its face, not to the law as applied to the petitioner. The majority opinion footnotes that: ". . . The record does indicate he [the petitioner] was informed of the detainer." It does, and he was.

Turning to the law itself, and the Uniform Detainer Agreement, which it authorizes, we find that the Uniform Detainer Agreement (Form V) provides and requires: "Five copies. Signed copies *must be sent to the prisoner* and to the official who has the prisoner in custody. . . ." (Emphasis supplied.)

Despite this specific provision in the Uniform Detainer Agreement, the majority opinion finds that the act has ". . . no provision requiring the prompt notification by correctional officials of detainers lodged against a prisoner to the warden of an institution. Thus the warden cannot in his turn 'promptly' inform the prisoner thereof as he is required under Art. III (c)."

Aside from the mandate of the cited provision of the Uniform Detainer Agreement, the act itself provides that, when the governor of this state receives under the act a written request for temporary custody or availability of a prisoner in this state, ". . . there shall be a period of 30 days after receipt by the appropriate au-

---

[1] The agreement is not only adhered to by the Congress of the United States as a party (Interstate Agreement on Detainers Act of December 9, 1970, 84 Stat. 1397–1403) but is authorized by the Crime Control Consent Act of 1934 (4 USCA, sec. 112).

thorities before the request is honored . . . ."[2] The same section provides that the governor may disapprove the request for temporary custody or availability under the act ". . . either upon his own motion *or upon motion of the prisoner.*" (Emphasis supplied.)

The only reasonable construction of the provision giving a prisoner the right to move the governor to disapprove the request is that it also includes a requirement of notice that a request has been filed and that the prisoner may petition the governor. How could the right to challenge by motion be exercised if notice was not also assured? Seeing statutory construction as designed to save, not scuttle,[3] the writer would hold both notice and right to move the governor for disapproval required by the act, exactly as set forth in the Uniform Detainer Agreement it authorizes. The writer sees no foundation to the claim that the Uniform Detainer Act does not provide for notice to the prisoner, timely and adequate.

II. *"Equal protection."*

The majority opinion holds the Uniform Detainer Act to violate the "equal protection" assurance of the United States Constitution. The Uniform Detainer Act and the Uniform Criminal Extradition Act are placed side-by-side. The majority notes that either act was available to the requesting state in this case. The conclusion is that use of the Uniform Detainer Act denied rights the prisoner would have had under the Uniform Criminal Extradition Act procedure. Therefore, as compared to prisoners against whom the extradition act procedure was followed, there is, the majority asserts, an "arbitrary classification" and "unequal protection."

---

[2] Sec. 976.05, Art. IV (a), Stats.

[3] It has long been recognized that an act of the legislature is to be sustained by any reasonable construction of the act. *In re Appointment of Revisor* (1910), 141 Wis. 592, 124 N. W. 670.

If this approach, based on balancing, has validity, the writer finds it a challenge to the constitutionality of the Uniform Criminal Extradition Act, not to the Uniform Detainer Act.

The majority opinion devotes considerable space to discussing the adequacy of provisions for the notice to the prisoner of the filing of a request for detainer provided in the Uniform Detainer Act. It does not mention that no notice at all is given the prisoner of the filing of a request for detainer under the extradition act. There the rights given the prisoner commence only after the issuance of the governor's warrant, not before.[4]

Also, there is no right under the extradition act for the prisoner to move the governor to deny the request. The extradition act states, as to rights of the person being extradited: ". . . No person arrested upon such [governor's] warrant shall be delivered over to the agent . . . appointed to receive him unless . . ." such person has been accorded the rights thereinafter listed.[5] The rights granted become operative only after the governor has acted and his warrant issued. Thus the detainer act creates and gives to prisoners two substantive rights not found in the extradition act—the right to notice and to move the governor to deny the request for temporary custody before it is granted.

It is true that the extradition act provides that, after the governor has acted and the warrant is issued and the person arrested, such person shall be taken before a

---

[4] Sec. 976.03 (10), Stats. *Also note:* "The Uniform Criminal Extradition Act provides that if a criminal prosecution has been instituted against a person under the laws of the asylum state and is still pending, the governor, in his discretion, may either surrender the accused, or hold him until he is tried and discharged, or convicted and punished, in the asylum state. . . ." 31 Am. Jur. 2d, *Extradition*, pp. 935, 936, sec. 18.

[5] Sec. 976.03 (10), Stats.

judge who is to inform him of the demand made for his surrender and of the crime with which he is charged, of his right to counsel and to bring a writ of habeas corpus to test the legality of his arrest. Appointing counsel or the public defender to represent the prisoner against whom a detainer is filed under the detainer act would give the prisoner the same information, plus the opportunity to challenge the issuance of a governor's warrant before it is issued. The extradition act gives him the information but at a much later point in time and only after the governor has acted.

Put on the detainer act side of the scales the requirement of right to notice and to challenge and to counsel before the governor has acted. Put on the extradition act side of the scales the requirement of being judicially informed of one's situation after the governor has issued a warrant. This is like balancing two large stones against one small pebble. Where two substantive rights have been added and one information procedure has been eliminated, we see no "equal protection" argument, at least not against the new law and procedure.

III. *"Lack of due process."*

The majority opinion finds "a hearing procedure similar to that provided for in the Uniform Criminal Extradition Act" necessary to "cure" a "due-process" as well as the "equal-protection" defect in the Uniform Detainer Act. The reference to "hearing procedure" relates to the appearance before a judge, after the governor's warrant has been issued and the person named placed under arrest, as provided for in the extradition act. It is not easy to see how the extradition act court appearance can be termed a hearing at all. What happens, and all that happens, is that the judge informs the defendant of the demand for extradition, the nature of the charge, the right to counsel and the right to test legality by writ.

How this fits into an extradition proceeding—after a governor's warrant has been issued and after the person has been arrested and before he is turned over to the agent of the requesting state—is clear. How this fits— or why such postwarrant appearance is needed where, under the detainer act, the prisoner has the earlier rights to notice and to challenge and to counsel even before the governor has acted, plus the right to challenge the governor's action by writ through his counsel—is not at all clear.

Even less clear is how what this court did in the *Huebner Case* [6] can be analogized and used as the basis for what is mandated here. In *Huebner*, the determination of whether a defendant was or was not a sex deviate in need of specialized treatment, was held to be ". . . an independent proceeding which determines such important rights of the defendant . . . that due process requires a hearing thereon . . . ." [7]

In the visit to the judge which the majority now mandates in detainer act cases, no rights at all are to be determined. The prisoner is to be told of his situation and rights to counsel and challenge by writ the legality of his arrest. Under the Uniform Criminal Extradition Act, this judicial informing is to take place only after the issuance of a governor's warrant and the person's arrest. Where, under the Uniform Detainer Act, far earlier rights to notice, to move the governor to disapprove the request before he has acted, plus right to counsel in making such motion, are provided, can it be said that what is done in extradition act cases is constitutionally required in detainer act cases? The writer thinks there is no such constitutional requirement.

Unfortunately, the term "due process" has come to have an accordion-like quality, expanding or contracting

---

[6] *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646.
[7] *Id.* at page 526.

to fit the public policy predilections of the jurist defining it. However, it is stretched beyond reasonable limit when it is held to require a prisoner in detainer act proceedings must be brought before a judge to be given certain information. Where the Uniform Detainer Act requires notice to the prisoner and gives the opportunity to make a motion, certainly through legal counsel, for disapproval even before the governor has acted, the writer would hold the constitutional requirements of due process have been met.

It is to be added only that the Uniform Detainer Act was intended and serves to facilitate trials on pending warrants or indictments of persons confined in prisons in other states. This is an aid to timely and efficient processing of pending criminal cases. Also, it is an opportunity for persons imprisoned in one state to have resolved charges pending against them in other states. Any assumption that prisoner interests are served by one sentence being served in one state, before matters pending in other states are resolved, is erroneous. The Uniform Detainer Act, authorizing transfer of temporary custody to a requesting state for trial purposes, permits a clearing of the decks so that the person confined does not face a series of unresolved charges upon release.[8] The Uniform Detainer Act serves both the cause of timely prosecutions and of timely resolution of all charges pending against a prisoner.

The writer would deny the petition for writ of mandamus, holding the challenges to the constitutionality of the Uniform Detainer Act to be without merit and

---

[8] Contrast Art. III (a) of the detainer act which gives a prisoner the right to be brought to trial in the requesting state within 180 days of his request for a final disposition, with section 19 of the extradition act which gives the governor the discretion to prevent the prisoner from going to trial in the requesting state until after the prisoner has completed his sentence in the holding state.

the challenges to the application of the act to the petitioner in this case to be without substance.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.