John ADAMS

v.

Julius T. CUYLER, Thomas J. Shusted, Brenden T. Byrne, Milton Shapp, John Doe and Richard Roe.

Civ. A. No. 77–2075.

United States District Court,
E. D. Pennsylvania,
Civil Division.

Oct. 21, 1977.

John Adams pro se.

Maria Parisi Vickers, Dept. of Justice, Asst. Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This case is a civil rights action brought by the plaintiff, John Adams, for himself and all others similarly situated. Plaintiff is seeking damages, declaratory, and injunctive relief based on alleged constitutional violations occasioned by the transfer of prisoners from Pennsylvania to New Jersey pursuant to the Interstate Agreement on Detainers, Pa.Stat.Ann. tit. 19, § 1431 (Purdon 1964) (Detainer Agreement).

Plaintiff was, at the time this complaint was filed, incarcerated in the State Correctional Institute at Graterford, Pennsylvania. He has since been remanded to the custody of the appropriate authorities of Camden County, New Jersey in response to their request for temporary custody made under Article IV of the Detainer

Agreement.[1] Plaintiff claims that although he was given a copy of the request made by the New Jersey officials, he was never "informed of his constitutional rights" with respect thereto.

The complaint asserts that the Detainer Agreement as applied has two separate constitutional deficiencies which entitle the plaintiff to the requested relief. First, it is contended that the practice of not informing prisoners of their constitutional and statutory rights in connection with an interstate transfer violates the due process clause of the fourteenth amendment. Second, it is asserted that the fact that persons transferred interstate under the Detainer Agreement are not afforded the same procedural rights as persons transferred under the Uniform Criminal Extradition Act, Pa.Stat.Ann. tit. 19, 191.1–§ 191.31 (Purdon 1964) (Extradition Act), violates the equal protection clause of the fourteenth amendment. I find that both claims are without merit and, therefore, dismiss the complaint for failure to state a claim upon which relief can be granted.

■ The plaintiff's due process claim must be dismissed because, simply stated, the plaintiff has no constitutional or statutory rights of which he could be informed. It is well settled that there is no constitutional right to any procedure to challenge an extradition. *See e. g., Feilke v. Governor of New Jersey,* 414 F.Supp. 10 (E.D.Pa. 1976). The civil rights statutes do not provide a remedy for an individual who is involuntarily transferred interstate in violation of the extradition statutes. *Hines v. Guthrey,* 342 F.Supp. 594 (W.D.Va.1972); *Johnson v. Buie,* 312 F.Supp. 1349 (W.D.Mo. 1970). In fact, the Supreme Court has held that a criminal defendant's rights are not violated when the prosecuting state forcibly abducts the defendant from another jurisdiction. *Frisbie v. Collins,* 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois,* 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). In *Frisbie,* the Court stated.

[D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

*Frisbie v. Collins, supra,* 342 U.S. at 522, 72 S.Ct. at 512. Similarly, the plaintiff here cannot assert any constitutional right to any type of review prior to being transferred to the New Jersey authorities. *Cf. Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). (Normally there is no due process required when prisoners are transferred intrastate).

■ In addition to asserting a constitutional right to review, the plaintiff contends that he has a statutory right to petition the Governor of Pennsylvania to block his transfer to New Jersey. It is claimed that the failure to inform prisoners of this alleged right is an unconstitutional denial of due process. I need not decide that issue, however, since I have concluded that while the Governor has the power to deny another state's request for custody of a Pennsylvania prisoner, the prisoner has no "right" to have his case reviewed by the Governor. The plaintiff, apparently, seeks to harvest a right from the following language of the "Detainer Agreement"

[T]here shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

Pa.Stat.Ann. tit. 19, § 1431, Art. IV(a). I do not believe, however, that because the governor has the power to act on a prisoner's request the prisoner has a constitution-

---

1. Because of plaintiff's requests for damages and class representation, the fact that plaintiff has already been transferred does not make the action moot. *Danzy v. Johnson,* 417 F.Supp. 426 (E.D.Pa.1976).

al right to be specifically advised of his ability to move the Governor to disapprove the request for temporary custody. *Cf. United States v. Rothman,* 492 F.2d 1260 (9th Cir. 1973); *United States v. Horton,* 488 F.2d 374 (5th Cir. 1973) (There is no requirement that a defendant be apprised of his right to refuse permission to search in order to give a valid consent).

█ The plaintiff's equal protection claim is without merit because there is a rational basis for treating prisoners sought by other states in a different manner than persons who are at large in the state in which they are found. There need only be a rational basis for the disparate treatment in order that the classification survive judicial scrutiny. *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1972); *James v. Strange,* 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972); *Schilb v. Kuebel,* 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1970); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

The rational basis in the present classification is evident once the purpose of providing a hearing prior to a transfer under the Extradition Act is understood. In *Johnson v. Buie, supra,* the court, in describing that purpose, stated:

> "The theory behind permitting the fugitive to petition for habeas corpus in the asylum state is that it is a method of challenging the legality of his detention there. Once the accused has been brought within the custody of the demanding state, the legality of the extradition is no longer a proper subject of any legal attack by him."

312 F.Supp. at 1351. The plaintiff in this case is not challenging the legality of his incarceration in Pennsylvania, and, therefore, there is no reason to allow him the process available under the Extradition Act. Thus, not only is there a rational basis for *not* proceeding under the Extradition Act when transferring inmates interstate, there would be no rational basis for not utilizing the expeditious procedure under the Detainer Agreement.

█ In conclusion, I find no constitutional deficiencies in the Interstate Agreement on Detainers either on its face or as applied and consequently dismiss the complaint for failure to state a claim upon which relief can be granted.