THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.*
KENNETH KOREN, Respondent-Appellant.

Third District   No. 82—674

Opinion filed May 4, 1983.

Robert Agostinelli and Verlin R.F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edwrd F. Petka, State's Attorney, of Joliet (John X. Breslin and Patricia Hartmann, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

The respondent, Kenneth Koren, an inmate at the Joliet Correctional Center, is the subject of a petition for temporary custody filed by the State of Ohio pursuant to the Interstate Agreement on Detainers. The respondent appeals from the denial of his petition for writ of

*habeas corpus.* We reverse.

On July 22, 1982, the prosecutor of Cuyahoga County, Ohio, served the warden of the Joliet Center with a request for temporary custody of the respondent pursuant to section 3—8—9 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9), the Illinois codification of the Interstate Agreement on Detainers. The respondent replied with a petition for writ of *habeas corpus.* The State then filed a petition to transfer temporary custody.

During the hearing on the State's and the respondent's petitions, the State presented the testimony of Kathy Cummings, a clerk-typist at the Joliet Center. Cummings testified that the Joliet Center, after receiving a request for temporary custody of the respondent, notified the Governor's office and the Joliet Center's legal staff of the request. The Governor's office responded with a letter approving the transfer of custody. It was during the cross-examination of Cummings that the question of whether the respondent had been notified of his right to petition the Governor to disapprove the request for temporary custody was raised.

Edward Kovacic, a detective in the Cleveland, Ohio, police department, testified that he investigated a murder and armed robbery which occurred in Cleveland, Ohio, on December 20, 1975. Kovacic interviewed the respondent in connection with his investigation. The respondent was subsequently indicted in connection with the murder and armed robbery. On cross-examination Kovacic acknowledged that he did not advise the defendant of his right to petition the Governor to disapprove the request for temporary custody.

The respondent moved for a finding in his favor at the conclusion of Detective Kovacic's testimony, arguing that his right under the Interstate Agreement on Detainers (hereinafter the Agreement) to petition the Governor had been denied. The court found that there was no affirmative duty imposed on the State by the Agreement to inform the respondent of this right. The court further found that the requirements of the Agreement had been met. The respondent's petition for writ of *habeas corpus* was therefore denied. The State's petition for transfer of custody was granted, but the order transferring the respondent was stayed pending this appeal.

The issue on appeal is whether the respondent was denied due process of law by not being advised of his right under the Agreement to petition the Governor to disapprove the request for temporary custody. This issue raises questions not previously addressed by the courts of Illinois. The State argues in response that the issue of whether the respondent was informed of his right to petition is not

properly raised in a hearing under the Agreement, and, alternatively, that the respondent has no right to be informed of his right to petition the Governor.

■ We initially determine whether the respondent properly raised this issue in an extradition-type hearing under the Agreement. A prisoner who has a detainer lodged against him pursuant to article IV of the Agreement retains the rights afforded him under the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1981, ch. 60, pars. 18 through 49), including a pretransfer hearing. (*Cuyler v. Adams* (1981), 449 U.S. 433, 449-50, 66 L. Ed. 2d 641, 654-55, 101 S. Ct. 703, 712.) The scope of a pretransfer extradition hearing, which is heard as a *habeas corpus* proceeding, is generally limited to resolution of the questions: (1) whether documents are regular in form; (2) whether the prisoner is the person named in the warrant; (3) whether the prisoner is a fugitive; and (4) whether the prisoner has been charged with a crime in the demanding State. (*Michigan v. Doran* (1978), 439 U.S. 282, 58 L. Ed. 2d 521, 99 S. Ct. 530.) However, this court has affirmed the inquiry during an extradition hearing into the question of whether the prisoner's right to a speedy trial was violated. *People v. McInery* (1980), 91 Ill. App. 3d 68, 413 N.E.2d 876.

The State argues that because the issue raised by respondent is beyond the scope of inquiry permitted in an extradition proceeding, it should not be considered here. (As we discussed above, the courts of this State have permitted inquiry during an extradition hearing into at least one issue not among the four issues set forth in *Doran.*) In support of this argument, the State also cites *People ex rel. Levin v. Ogilvie* (1967), 36 Ill. 2d 566, 224 N.E.2d 247. We find both *Doran* and *Levin* to be distinguishable from the instant case. In *Doran,* the issue raised by the accused in his *habeas corpus* proceeding was whether probable cause existed in the demanding State to arrest him. The Supreme Court phrased the issue on appeal as one concerning the power of the courts of an asylum State to review the finding of probable cause made by a judicial officer in the demanding State. The Supreme Court held that the courts of an asylum State had no power to review the finding of probable cause, reasoning that to allow review in an asylum State of issues which can be litigated in the demanding State would defeat the purposes of the extradition clause, article IV, section 2, clause 2 of the United States Constitution, which is intended to permit the swift processing of criminal offenders. *Michigan v. Doran* (1978), 439 U.S. 282, 58 L. Ed. 2d 521, 99 S. Ct. 530.

Similarly, in *Levin,* the issue raised was whether statements made by the demanding State's district attorney in the application for ex-

tradition proceedings to the demanding State's Governor were false. The Illinois Supreme Court noted that the purpose of the evidence offered by the accused was "to challenge the good faith of the complainant and the authorities of the demanding State, matters we have consistently held may not be inquired into by the courts of this State in extradition matters." *People ex rel. Levin v. Ogilvie* (1967), 36 Ill. 2d 566, 567, 224 N.E.2d 247, 247.

A finding in the instant case that the question of whether the respondent was notified of his right to petition was properly raised in the pretransfer hearing creates no conflict with the reasoning or holdings of either *Doran* or *Levin*. The matters inquired into in order to resolve the respondent's issue all relate to procedures implemented and executed by the asylum State. Evidence was already taken during the *habeas corpus* proceeding regarding the regularity of the demanding State's papers. Indeed, in the instant case, the same witness, Kathy Cummings, who testified regarding the receipt of the demanding State's papers was also questioned regarding the delivery of Illinois' forms to the respondent. Clearly, the inquiry necessary to determine the respondent's right was directed solely to the actions of officers of the asylum State. The inquiry neither reviewed issues which could be litigated in the demanding State nor challenged the authorities of the demanding State.

Further, the action against the respondent was brought pursuant to the Agreement and not the Extradition Act. While *Cuyler v. Adams* (1981), 449 U.S. 433, 66 L. Ed. 2d 641, 101 S. Ct. 703, established that a person against whom a detainer is lodged must have the protection afforded him by the Extradition Act, we do not believe that the guarantees in *Cuyler* define the maximum protection which may be afforded a prisoner under the Agreement.

■ We find that the pretransfer hearing is the appropriate place for the prisoner to raise any questions regarding compliance by the asylum State with the procedural requirements of the Agreement. The burden on the asylum State of refuting issues raised regarding the compliance of the asylum State's procedures with the requirements set forth in the Agreement would therefore be minimal. Resolution of questions relating to procedural compliance by the asylum State during the *habeas corpus* hearing would not cause delay in the transfer of custody. Conversely, to deny a prisoner the opportunity to present these issues in the pretransfer hearing would be to deny the prisoner a forum in which he may protect the rights afforded him by these procedures. When balanced against the minimal burden imposed on the State, the need to provide a forum wherein a prisoner may

protect his right to proper statutory procedure convinces us that the better rule is to allow the prisoner to raise the issue of whether he must be informed of his right to petition the Governor in his *habeas corpus* hearing.

Having determined that the question raised by the respondent was properly before the lower court, we now consider the merits of the respondent's claim. This is also a question of first impression in Illinois. After a careful review of the case law from our sister States and the Federal courts, we conclude that the respondent possessed a statutory right to be informed of his right to petition the Governor.

Article IV(a) of the Agreement, codified in Illinois as section 3—8—9 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—8—9, art. IV(a)), provides:

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint shall have duly · approved, recorded and transmitted the request: and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."

■ The respondent argues that the State, having created a statutory right to petition, must give the respondent notice of that right in order to satisfy procedural due process requirements. The State concedes that a prisoner who is transferred under the Agreement has a right to petition the government to disapprove the transfer. The question before this court therefore is whether due process requires notification of that right. We hold that it does.

The State, in its argument that no right to notice exists, relies on the decision in *Adams v. Cuyler* (E.D. Pa. 1977), 441 F. Supp. 556, in which the district court held that a prisoner had no right under the Agreement to petition the Governor. The court declined to decide whether a prisoner must be informed of the petition to the Governor because it "concluded that while the Governor has the power to deny

another state's request for custody of a Pennsylvania prisoner, the prisoner has no 'right' to have his case reviewed by the Governor." (441 F. Supp. 556, 558. See also *Commonwealth ex rel. Coleman v. Cuyler* (1978), 261 Pa. Super. 274, 396 A.2d 394.) This holding was not reviewed by the circuit court. (*Adams v. Cuyler* (3d Cir. 1979), 592 F.2d 720.) Consequently, the Supreme Court did not address this issue in its opinion. *Cuyler v. Adams* (1981), 449 U.S. 433, 66 L. Ed. 2d 641, 101 S. Ct. 703.

The State's reliance on the district court's opinion in *Adams* is misplaced. The critical issue in *Adams* was whether a right to petition the Governor existed. Where no right to petition exists, there is obviously nothing of which to notify the prisoner. However, the existence of the right to petition the Governor is not at issue in the instant case. The district court's opinion, therefore, is immaterial to our consideration of the issue in the case at bar.

Our research has revealed only one case in which the issue in the instant case was resolved. The prisoner in *State ex rel. Garner v. Gray* (1972), 55 Wis. 2d 574, 201 N.W.2d 163, contended that the Agreement as enacted in Wisconsin violated his right to due process because it did not require that he be informed of his right to petition the Governor. The court held that the Agreement failed to adequately protect a prisoner's right to petition by failing to require that notice of the right be given to the prisoner. The court therefore construed the Agreement to require that a prisoner be advised of his rights, including his right to petition the Governor.

We find the reasoning in *Garner* persuasive. As the *Garner* court noted, the existence of a right is meaningless without notification of that right. The United States Supreme Court recognized this point in its decision in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. In establishing the procedural rights due an individual in police custody, the court consistently required notification of these procedural rights. The court required that a person held for interrogation be informed of his right to remain silent, reasoning: "[f]or those unaware of the privilege, the warning is needed simply to make them aware of it—the threshold requirement for an intelligent decision as to its exercise." (*Miranda v. Arizona* (1966), 384 U.S. 436, 468, 16 L.Ed. 2d 694, 720, 86 S. Ct. 1602, 1624.) The fact that notice is necessary in order to allow an individual to effectively exercise his rights is acknowledged repeatedly by the court in *Miranda*.

The respondent has been given the right to petition the Governor in this State under the Agreement. In order to intelligently and effectively exercise this right, he must know of that right. Without notice

of the right to petition, the prisoner has been effectively deprived of the right itself. A statutory right, once created, cannot be arbitrarily denied by the State. The failure to give notice of the statutory right denies a prisoner due process of law. We therefore hold that a prisoner must be informed by the State of his right to petition the Governor under article IV(a) of the Agreement when a detainer is lodged against him.

Following the respondent's pretransfer hearing, the lower court found that the respondent had no right to be informed of his right to petition the Governor. Consequently, no finding of fact was made as to whether the respondent was informed by the State of his right to petition the Governor. We therefore remand this case to the lower court for a determination as to whether respondent was, in fact, informed of his right to petition.

The judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings in accord with this decision.

Reversed and remanded.

SCOTT and BARRY, JJ., concur.