A. O. SMITH CORPORATION, Appellant, v. DEPARTMENT OF
REVENUE, Respondent.

*No. 336.   Argued June 5, 1969.—Decided June 27, 1969.*
(Also reported in 168 N. W. 2d 887.)

For the appellant there were briefs by *James N. Johnson* and *John H. Lungren,* both of Milwaukee, and oral argument by *Mr. Lungren.*

For the respondent the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. On October 16, 1959, and October 17, 1960, taxpayer filed purported corporate income tax returns (Form 4) with the respondent for its fiscal years ending July 31, 1959, and July 31, 1960, respectively. Form 4 is entitled "WISCONSIN STATE, COUNTY & MUNICIPAL CORPORATION INCOME TAX RETURN." The form is four pages long and the taxpayer filled in none of the portions relating to calculation of taxable income on either return except on the first page of each the taxpayer wrote "none" in the space provided for net taxable income, and on the bottom of the second page of each is written "No gross income from sources within the United States (see attached schedule showing gross income from sources outside the United States)." However, attached to each form is a four page statement explaining that all the income was derived from sources outside the United States, a listing of the gross income derived from each foreign country, a deduction for the total costs, and a net income figure.

After the four-year statute of limitations [1] had run, but before the six-year statute of limitations had run, the respondent audited the taxpayer and issued a notice of assessment of additional tax. The taxpayer has deposited the amount of the additional tax pending the solution of the controversy. The taxpayer admits that it should have paid the state of Wisconsin for the 1959 and 1960 income, but contends that the state is barred by the four-year statute of limitations from making any assessment. The respondent argues that the six-year statute of limitations controls and the assessment was proper.

The history of the six-year statute of limitations, sec. 71.11 (21) (g), indicates that prior to 1959 the provision read as follows:

"(21) ADDITIONAL ASSESSMENTS, WHEN PERMITTED.
". . . .

"(g) If the taxpayer *omits from gross income an amount properly includible therein which is in excess of 25 per cent of the amount of the gross income* stated in the return the tax may be assessed at any time within 10 years after the return was filed, notwithstanding any other limitations expressed in this chapter." (Emphasis added.)

In 1959, sec. 71.11 (21) (g), Stats., was repealed and re-created by ch. 489 of the Laws of 1959, and provided:

"71.11 (21) (g) of the statutes is repealed and re-created to read:

"71.11 (21) (g) Notwithstanding any other limitations expressed in this chapter, an assessment may be made if notice thereof is given within 6 years after a return was filed, *if the taxpayer reported for taxation on his*

---

[1] "71.11 **Administrative provisions; penalties.**
". . . .
"(21) ADDITIONAL ASSESSMENTS, WHEN PERMITTED.
". . . .
"(bm) With respect to assessments of income received in the calendar year 1954 or corresponding fiscal year, and in subsequent years, such notice shall be given within 4 years of the date the income tax or franchise tax return was filed."

*return less than 75 percent of the net taxable income properly assessable,* except that no assessment of additional income may be made under this paragraph for any year beyond the period specified in par. (b) unless the aggregate of the taxes on the additional income of such year is in excess of $100." (Emphasis added.)

Finally, with the enactment of ch. 163, Laws of 1965, sec. 75g, the word "taxable" was deleted from the phrase which formerly read "net taxable income properly assessable."

The primary dispute between the taxpayer and the respondent is construction of the clause in sec. 71.11 (21) (g), Stats. 1959, which reads "if the taxpayer reported for taxation on his return less than 75 per cent of the net taxable income properly assessable." The taxpayer contends that the statute is concerned only with the *accuracy* of the amount of net income reported on the return and not its taxability, *i.e.,* the statute is aimed at omissions of items of income. Therefore, the taxpayer concludes, since all of its net income was disclosed, albeit disclosed but claimed to be nontaxable as derived from foreign sources, it has *not* "reported for taxation on his return less than 75 per cent of the net taxable income properly assessable." As such, only the four-year statute of limitations is applicable and the respondent is barred from making the assessment it did.

The respondent contends that the question is not whether the taxpayer reported 75 percent of its net income to the respondent, but whether the taxpayer reported for taxation less than 75 percent of its net taxable income properly assessable. The respondent concludes that since the taxpayer reported net taxable income as "none" it has reported for taxation less than 75 percent of its net taxable income properly assessable and the six-year statute of limitations is applicable. The trial court was also of this view.

The taxpayer argues that since prior to 1959, sec. 71.11 (21) (g), Stats., was substantially the same as sec.

275 (c) [2] of the then current Internal Revenue Code, the federal court decisions construing sec. 275 (c) should be given considerable weight. Both the federal and the state statutes extended the statute of limitations for situations where a taxpayer omitted more than 25 percent of his gross income.

Before 1958, the federal courts were inconsistent in their interpretation of sec. 275 (c). For example, *see O'Bryan v. Commissioner of Internal Revenue* (9th Cir. 1945), 148 Fed. 2d 456, 459. However, in *Colony, Inc. v. Commissioner* (1958), 357 U. S. 28, 78 Sup. Ct. 1033, 2 L. Ed. 2d 1119, the United States Supreme Court rejected the position that sec. 275 (c) was intended to provide a longer statute of limitations where returns contained relatively large errors. In *Colony,* the appealing taxpayer reported all his gross receipts, but overstated the "basis" of certain lots of land sold by erroneously including in their cost certain items of development expense. The commissioner took the view that the statutory language "omits from gross income an amount properly includible therein," embraced not merely the omission from a return of an item of income received by or accruing to a taxpayer, but also an understatement of gross income resulting from a taxpayer's miscalculation of profits through the erroneous inclusion of an excessive item of cost.

The United States Supreme Court rejected the commissioner's position and determined that the statute only applied to situations where a taxpayer failed to report particular income receipts and accruals. On arriving at this conclusion the court placed heavy emphasis on the fact that the word "omits" was used instead of a verb

[2] ". . . If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed . . . at any time within 5 years after the return was filed."

such as "reduces" or "understates." The court concluded that the rationale of sec. 275 (c) was to give the commission an additional two years to investigate tax returns in cases where, because of a taxpayer's omission to report some taxable item, the commissioner is at a special disadvantage in detecting errors. "In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage." *Colony, supra,* 36.

The taxpayer in our case argues that the above quoted language also has always been the rationale of sec. 71.11 (21) (g), Stats., even after the changes in 1959. The taxpayer suggests that the repeal and re-creation of sec. 71.11 (21) (g), was to close the loophole in the statute, as a result of the *Colony* decision which permitted a taxpayer who overstated deductions to avoid the statute. The change in the Wisconsin statute occurred about a year after the *Colony* decision.

There appears to be no doubt that one of the purposes of the revision of sec. 71.11 (21) (g), Stats., was to cure the situation where a taxpayer under the old language could report all of his gross income, and, even though grossly overstating his deductions, escape the imposition of the longer statute of limitations. The respondent admits this, and it is further supported by a statement of purpose for the change by Mr. J. E. Nusbaum contained in the drafting request. In the instant case, Mr. Nusbaum did achieve the purpose he desired.

The meaning of a legislative act must be determined from what it says. "[L]egislative acts must be construed from their own language, uninfluenced by what the persons introducing or preparing the bill actually intended to accomplish by it. *Moorman Mfg. Co. v. Industrial Comm.* 241 Wis. 200, 5 N. W. (2d) 743." *Estate of Matzke* (1947), 250 Wis. 204, 208, 26 N. W. 2d 659.

It is significant that the word "omits" was dropped from the repealed statute. Thus there is no support for the taxpayer's statement that the change was merely from a theory based on omissions resulting in understating "gross income," to one based on omissions resulting in understating "net taxable income." If the taxpayer's theory was correct, the new statute could have simply referred to omissions from net taxable income. Such was not done.

More significant is the fact that the re-created statute used the words "net taxable income." The United States Supreme Court in *Colony*, in rejecting the commissioner's contention that in enacting sec. 275 (c) Congress was primarily concerned with providing for a longer period of limitations where returns contained relatively large errors, stated that "if the mere size of the error had been the principal concern of Congress, one might have expected to find the statute cast in terms of errors in the total tax due or in total *taxable net income*." (Emphasis added.) *Colony, supra,* 36. This is the exact language adopted by the Wisconsin legislature within one year of the *Colony* decision.

In fact, the Wisconsin legislature went a step further and used the language "net taxable income *properly assessable*." The clear meaning of such language indicates that the statute is concerned with reporting the amount of income which is taxable, *i.e.*, properly assessable. If the legislature was only concerned with the accuracy of the amount of net income reported on the form, as the taxpayer contends, then there would be no need for the words "properly assessable." We view "properly assessable" to mean properly subject to tax liability. The phrase "net taxable income properly assessable" refers to the figure set forth in the return upon which the tax rate is applied and which the taxpayer indicated by its return was "none."

". . . In construing or 'interpreting' a statute the court is not at liberty to disregard the plain, clear words of the statute." *State v. Pratt* (1967), 36 Wis. 2d 312, 317, 153 N. W. 2d 18.

"The popular or reasonable import of words furnishes the general rule for the interpretation of public laws. The plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or hidden sense. . . ." *State Bank of Drummond v. Nuesse* (1961), 13 Wis. 2d 74, 78, 108 N. W. 2d 283.

It seems clear to us that the statements submitted by the taxpayer would not put the respondent on notice that some of the income was taxable by the state of Wisconsin. The fact that the taxpayer had income attributable to Wisconsin business came to light only after the respondent's field audit of the taxpayer's income and business affairs. The audit revealed that income taxable in Wisconsin was $155,815 in 1959, and $70,012 in 1960, while the taxpayer merely reported net income figures of $536,404.01 and $356,358.94 for each of the respective years. The Wisconsin Tax Appeals Commission also found that "Neither of the petitioner's returns for the years here under review put the respondent on notice that the petitioner had income attributable to Wisconsin or that the petitioner had net income properly assessable by the State of Wisconsin." Such a finding is supported by the substantial evidence.

While in the final analysis it is the duty of the respondent to assess incomes (sec. 71.11 (1), Stats.), the taxpayer is bound in the first instance to report his income tax liability (sec. 71.10). When a taxpayer, such as in the situation here, makes an inaccurate or improper determination of its net taxable income properly assessable, and compels the respondent to conduct an audit in order to determine that a substantial amount of "net taxable income properly assessable" exists, it is reasonable that the respondent should have an additional period to investigate and make an assessment.

The real question is not *who* is responsible for assessing, but *what* was properly assessable.

We here determine that the words "net taxable income properly assessable" mean net income subject to tax liability. Therefore, since the taxpayer reported net taxable income as "none," it has reported for taxation less than 75 percent of the net taxable income properly assessable and the respondent's assessment under sec. 71.11 (21) (g), Stats., was proper.

We conclude by observing that the legislative enactment of 1965 deleted the word "taxable" from the phrase "net taxable income properly assessable." There is no definition of "net taxable income" in sec. 71.02 (1), Stats., which sets forth definitions applicable to corporations. We view this change as being made to conform to sec. 71.02 (1), which gives definitions of terms for ch. 71. Sec. 71.02 (1) (a) states: " 'Net income' means, for corporations, 'gross income' less allowable deductions."

*By the Court.*—Judgment affirmed.