ALDWIN H. SEEFELDT, Corporation Counsel, Washington County
You advise that the Reapportionment Committee of the Washington County Board of Supervisors has directed that you seek my opinion regarding whether sec. 59.03 (2), Stats., imposes, by implication or otherwise, aminimum number of supervisors for each of the classifications set forth therein or, in the alternative, whether counties in the various population classifications must have a minimum number of supervisors because of constitutional requirements.
Section 59.03 (2) (a), Stats., provides as follows:
"Classification: maximum number of supervisors. Counties having a population of less than 500,000 and more than one town are classified and entitled to a maximum number of county board supervisors, as follows:
"1. Counties having a population of less than 500,000 but at least 100,000 shall have no more than 47 supervisors.
"2. Counties having a population of less than 100,000 but at least 50,000 shall have no more than 39 supervisors.
"3. Counties having a population of less than 50,000 but at least 25,000 shall have no more than 31 supervisors.
"4. Counties having a population of less than 25,000 and containing more than one town shall have no more than 21 supervisors.
"5. If the population of any county is within 2% of the minimum population for the next most populous grouping under this paragraph, the county board thereof, in establishing supervisory districts, may employ the maximum number for such districts set for such next most populous grouping." *Page 329 
The composition of counties having a population of at least 500,000 and counties having only one town are treated in secs. 59.03 (1) and (4), Stats.
You indicate that a certain "statement" issued by the Attorney General of Wisconsin on June 11, 1965, has apparently given rise to much of the Committee's concern over the possible statutory requirement of a minimum number of supervisors for each class set forth in the statute. You quote from said statement, at page 12, as follows:
"It would appear wise, however, for each county to devise a plan which will give the greatest equality as to population between districts, and which will provide for a number of supervisors at or less than the maximum permitted, but in excess of the number permitted for the next lower class.
"The validity of a plan and the validity of the classification system set forth in the law might be a subject of real concern if one county of 100,000 population created 47 supervisory districts and another of the same population created only 3 supervisory districts. To avoid a result of holding the classifications invalid, a court might hold that the law means that a county in class one, for example, may have no less than 40 nor more than 47 supervisors."
The language utilized in sec. 59.03 (2) (a), Stats., appears plain and unambiguous. The statute clearly places a limitation on the size of the various county boards which fall within its provisions by establishing four different population groupings, each entitled to a different "maximum number of county board supervisors." I am, therefore, of the opinion that the statute, on its face, does not require a minimum number of supervisors in any classification. Furthermore, as you point out in your letter, even if the statutes were to be considered ambiguous, the legislative history preceding its enactment leads necessarily to the same conclusion.
Section 59.03 (2) (a), Stats., was enacted in its present form by ch. 20, Laws of 1965. This law was originally introduced in the legislature as 1965 Senate Bill 1, and at the time of its adoption the legislature had before it a report of the County Boards Representation Committee of the Wisconsin *Page 330 
Legislative Council, entitled "Report to the 1965 Wisconsin Legislature on Senate Bill 1, relating to County Board Representation," dated February 3, 1965. The following is stated at pages 4 and 5 of the report:
"The kinds of problems confronting counties and their service responsibilities generally relate to the size of the population of the counties. Because of the wide differences among the counties in terms of size, the committee concluded that all counties could not be treated identically in establishing a new system of county board representation. Also, it was asserted in testimony before the committee that some county boards are too large and unwieldy to be as effective as they could be. On the basis of these and other judgments, the committee created 4 classifications of counties, according to population groupings, and specified the maximum number of supervisors for each of the 4 groups. It was felt that such a classification system would be helpful to the county boards in apportioning supervisory districts so as to achieve, as far as possible, "equality of representation" within each county. The committee believed that it is important to leave some flexibility to the counties in determining the exact number of supervisors which would be appropriate for a particular county, so long as the county did not exceed the maximum number specified for the class. There was considerable discussion about the possibility of establishing both a maximum and a minimum number of supervisors per class. However, the committee concluded that this would be unnecessarily restrictive. It was the consensus of the committee that, in fact, no wide variations in the size of boards among counties in a given classification would result, and therefore substantial uniformity would prevail among counties in each class."
The minutes of the previous meetings of the above-mentioned Committee of the Wisconsin Legislative Council make it crystal clear that there was lengthy consideration of the question whether the proposed bill should set a minimum as well as a maximum number of supervisors for each of the population classifications being considered. The meeting of the Committee held on November 5, 1964, contains the following entry, at page 12: *Page 331 
"Mr. Torinus moved, seconded by Senator Meunier, that the committee proceed with the plan of establishing a maximum number of supervisors for each classification, giving no regard to minimums. The motion carried unanimously on a roll call vote."
The 1965 statement of the Attorney General, quoted in part above, was undoubtedly meant as a cautionary note generated by a concern that sec.59.03 (2) (a), Stats., might be viewed as contrary to the provisions of Art. IV, sec. 23, Wis. Const., which requires that the legislature establish but one system of county government, which shall be as nearly uniform as practicable.
It is elementary that all legislative acts are presumed constitutional, and every presumption must be indulged in to sustain the law if at all possible. Gottlieb v. City of Milwaukee (1967),33 Wis.2d 408, 415, 147 N.W.2d 633. In addition, as previously indicated by the Wisconsin Supreme Court in State ex rel. Scanlan v. Archibold
(1911), 146 Wis. 363, 368-371, 131 N.W. 895:
"* * * the question of uniformity is subject to review by the courts, but it must also be remembered that under the repeated decisions of this court a broad discretion is vested in the legislature in determining whether the system of government under sec. 23, art. IV of the constitution is as nearly uniform as practicable. [Citations]"
The applicable tests in determining the constitutionality of legislation under the above constitutional provision were more recently set forth in West Allis v. Milwaukee County (1968), 39 Wis.2d 356, 371,372, 159 N.W.2d 36 as follows:
"(a) Counties may be classified on the basis of population, providing there is a reasonable basis for this treatment; only the essential nature of the county government must remain uniform;
"(b) changes in county government may be made where it is not practicable to carry on the usual government in a particular class of counties, provided there is a reasonable basis for diversity; *Page 332 
"(c) legislative findings with respect to preservation of the public health, welfare, and convenience of a county are entitled to great weight and will not be upset unless patently unreasonable:
"(d) the government of one county may vary from that of the others, provided the system remains untouched, and that in their details the governments vary only to the extent that it is impracticable for them to be uniform;
"(e) classification must be based upon some substantial and real differences of situation, a distinction germane to the purpose of the law; not be based on existing circumstances only, so as to preclude additions to the class, and apply to all members of the class,
"(f) if the rules of classification are complied with, a class may comprise but one county;
"(g) constitutionality of the law is tested by its language in the light of such matters as the court will take judicial notice of."
See also 52 OAG 45 (1963) for an earlier discussion of the applicable cases considering the constitutional provision dealing with uniformity of county government.
Section 59.03 (2), Stats., was enacted in its present form after the Wisconsin Supreme Court held that the previous version violated the equal-protection clause of the Fourteenth Amendment of the Federal Constitution and Art. 1, sec. 1, Wis. Const., because the statute on its face did not provide for the election of county board members on an equal population basis, since representation was by local unit rather than by population. State ex rel. Sonneborn v. Sylvester (1965), 26 Wis.2d 43, 48,49, 60, 132 N.W.2d 249. Section 59.03 (2) (b), Stats., now simply provides that "each county shall establish and number supervisory districts" consisting of one or more municipalities or parts thereof, by taking into consideration a number of factors including adherence to municipal boundary lines.
Once the governmental unit method of determining the number of supervisory districts was found to be in violation *Page 333 
of "one-man-one-vote" principles, the possible number of supervisors within most counties was at least theoretically subject to a great variance. However, as a practical matter, the addition of the requirement that there be adherence to municipal boundary lines, as well as the other guidelines for the exercise of legislative judgment contained in sec. 59.03
(2) (b), Stats., significantly limits the number of combinations which would comply with the statute. Furthermore, no serious constitutional question has apparently been raised in past years, based solely on differences in the size of various county boards, at least where the county boards were established on the basis of criteria which was both reasonable and uniform. The present statute seeks to rectify the previous inequities by recognizing equality of voting power within a context which still recognizes, to the extent possible, existing municipal boundary lines. In this sense, there appears to be little difference from the statute under attack in the Sonneborn case, except for the fact that the statute now requires election of county board members on an equal population basis.
I am aware of the early case of State ex rel. Peck v. Riordan (1869),24 Wis. 484, where the question was one of the constitutionality of a statute providing for a county board of eight supervisors in a particular county where the general statute relating to the organization of county government would have made provision for only three supervisors under the facts of the case. At page 489 of that case, the court said:
"* * * The uniformity of the system would seem to be as much broken by the diversity in the number which should constitute the board in counties of the same population, as by diversity in the distribution of the powers which the board shall execute. * * *"
Based on this statement relative to the uniformity of county government, this office has previously indicated that a law sanctioning a diversity in the number of town board members in towns of the same population would fail to comply with the "uniform as practicable" test of Art. IV, sec. 23, Wis. Const. 50 OAG 10, 15 (1961). As noted in that previous *Page 334 
opinion of our office, the holding of the Peck case supra, regarding unwarranted diversity in the number of county board supervisors has never been reversed or qualified by subsequent decisions. See 50 OAG 15, 16.
Faced with the above judicial authorities, it is difficult to accurately forecast the factors which would be considered most weighty in a determination of the constitutional question which is suggested by the present provisions of sec. 59.03 (2), Stats. However, as the court has indicated on many previous occasions, in construing or interpreting a statute, the court is not at liberty to disregard plain, clear words. A.O. Smith Corp. v. Wisconsin Department of Revenue (1969), 43 Wis.2d 420,429, 168 N.W.2d 887. Therefore, as pointed out previously, it is felt that the statute and its legislative history so clearly evidence an intent to establish only maximums for each classification of counties that a court would have difficulty resorting to a construction of the statute which would interpret the maximum of each class as also the minimum of the next higher class. On the other hand, in accordance with the normal presumption of constitutionality, an act of the legislature is to be sustained if possible by any reasonable construction of the constitution or of the act itself; and all mere doubts as to its validity are to be resolved in favor of the act. In re Apportionment of Revisor ofStatutes (1910), 141 Wis. 592, 124 N.W. 670.
The court may well find basis for distinction between sec. 59.03 (2) Stats., and the statutes under consideration in the Peck case. For instance, in the Peck case, supra, the specific statute under attack allowed eight supervisors for a particular county which under the general law would have been entitled to only three supervisors. No justification appeared to exist for this distinction. In contrast, sec. 59.03 (2), Stats., is a general statute which provides reasonable as well as uniform criteria for the establishment of the various supervisory districts in most Wisconsin counties. The statute makes no distinction between any of the counties falling within its provisions, other than the recognition that the needs of progressively larger counties should be met by statutory authorization for progressively larger county board membership. *Page 335 
The court, confronted with the prospect of early judicial authority, based on different facts and formed in the context of less demanding times, might well determine that a reasonable basis exists for the variation in number of supervisors which is permissible under sec. 59.03
(2), Stats., and that inasmuch as the powers, duties and functions of the county board remain the same, the presumption of constitutionality which attaches to the statute is not overcome.
In view of the foregoing considerations, it is my opinion that sec. 59.03
(2) (a), Stats., does not require that the maximum number of supervisory districts for each of the population classifications set forth therein must be considered as the minimum for the next higher class. It is also my opinion that the lack of such a minimum does not render the statute unconstitutional, even though, in theory, excess and abuse in the application of the statute might possibly lead to an unconstitutional result. The mere possibility of an unconstitutional application of an otherwise constitutional law does not invalidate the law itself. 54 OAG 56, 59 (1965).
RWW:JCM