STATE EX REL. MILWAUKEE COUNTY, Petitioner, v. WISCONSIN COUNCIL ON CRIMINAL JUSTICE, and others, Respondents.

*No. 75-584. Argued April 12, 1976.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 485.)

For the petitioner there were briefs by *Robert P. Russell,* corporation counsel, and *George E. Rice,* deputy corporation counsel, and oral argument by *Mr. Rice.*

For the respondents the cause was argued by *Robert D. Repasky,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Alan M. Lee,* assistant attorney general.

Briefs amicus curiae were filed by *Howard B. Eisenberg,* state public defender, for State Public Defender; by *Patrick J. Devitt* of Milwaukee, for Wisconsin Defender Association; by *Walter F. Kelly,* chairperson, Criminal Justice Committee, with *Joan Kessler,* president, and *Stephen Glynn,* member executive committee and executive committee liaison to the Criminal Justice Committee, of counsel, on behalf of the Milwaukee Junior Bar Association; and by *Nancy E. Goldberg* and *Marshall J. Hartman,* National Legal Aid and Defender Association of Chicago, Illinois, in support of respondents.

CONNOR T. HANSEN, J. Milwaukee county, petitioner (hereinafter county), seeks a declaration of rights between the parties regarding certain state plans developed by the Wisconsin Council on Criminal Justice, respondent (hereinafter WCCJ), for the appointment of counsel for indigent defendants in criminal cases. The application of the county for funds for this program was denied by the WCCJ.

The action was commenced when the county filed a petition for a writ of certiorari with this court. We

granted the writ. However, it appears the issues presented are more appropriately addressed as a declaratory judgment proceeding. Therefore, the writ of certiorari is dismissed and we consider this proceeding to be an original action for declaratory judgment.

It is conceded that the WCCJ is an arm of the executive branch of the state government created by executive order of the governor pursuant to sec. 16.54, Stats. It is the state planning agency required by the Omnibus Crime Control and Safe Streets Act, 42 U. S. Code 3701 (hereinafter the Act). The WCCJ administers funds made available to the state by the Law Enforcement Assistance Administration (hereinafter LEAA), as provided in the Act.

The WCCJ adopted a comprehensive plan for providing defender services for indigents for 1973, which was identified as program 19 and entitled "Defender Services." The plan was approved by LEAA, 42 U. S. Code 3733, and once so approved, the WCCJ could not disburse funds to subgrant applicants like the county unless their applications conformed to the state plan.

Briefly, and as the plan relates to populous counties, it provided that the local public defender should have the primary responsibility for representing indigent defendants, without the necessity of a specific judicial appointment in every case. In about 25 percent of the cases, however, it was provided that private counsel should represent indigent defendants. The method of appointment of private counsel was to be as follows:

"In order that the private bar be involved, the public defender should be empowered to appoint private counsel. Such appointments should be made on a rotational basis from a listing of the members of the private bar willing to participate. The list should be approved by the county's criminal and juvenile court judges to ensure that the attorneys on it are competent to handle criminal and juvenile cases."

The 1973 plan and the 1974 plan, program 23, were substantially the same. The 1975 plan, program 25, modified the 1973 and 1974 plans to some extent. The ultimate result of the modifications were that the judge could appoint a lawyer not on the rotational list, but in such event the plan provided the judge must make his reasons for doing so a matter of record. Regardless of the modification, the basic dispute remains and the county has not received a grant under these plans from the WCCJ.

The county submitted a subgrant application, 1998, for funds under the 1973 plan, program 19. The application did not conform to the comprehensive plan and was denied by the executive committee of the WCCJ. The county then pursued the appellate procedure required by sec. 42 U. S. Code 3733 (a) (8) and established by the WCCJ. The governor appointed a hearing examiner to hear the appeal and make recommendations. The examiner recommended upholding the denial of the executive committee of the county's application. The governor followed these recommendations and denied the county's appeal. The county then presented the matter to LEAA. The county was advised that the state plan conformed to the aims and purposes of the Act, and "If State law has been violated by the Governor's action, it would appear that an appropriate forum in the State could be found for considering the issues."

The matter is now before this court for resolution. The 1975 subgrant application of the county has been denied and no appeal taken from these denials. The county raises a number of issues. However, as we view the case, the dispositive issue is a determination of whether the plans of the WCCJ for the appointment of counsel for indigent defendants in criminal cases complies with, or is contrary to, existing state law, specifically sec. 970.-02 (6), Stats. We conclude that the plans of the WCCJ

are contrary to the state law and therefor invalid and that the WCCJ cannot impose invalid requirements on a subgrantee as a condition to receiving funds.

At the time this dispute arose, sec. 970.02 (6), Stats., provided:

"(6) The judge shall in all cases where required by the U. S. or Wisconsin constitution appoint counsel for defendants who are financially unable to employ counsel, unless waived, at the initial appearance. The judges of courts of record in each county shall establish procedures for the appointment of counsel in that county; . . . except that in any county having a population of 500,000 or more in any case not triable in the county court, the judge before whom the defendant initially appears shall transfer the case to the circuit court for the county and the clerk shall assign it to one of the criminal branches of that court. In such counties, an initial appearance may be before the circuit court. A determination of whether the defendant is financially able to employ counsel shall thereupon be made, and counsel appointed, if necessary, and the case remanded to the county court for a preliminary examination. The defendant may waive preliminary examination and the case need not be remanded for such waiver." (. . . added.)

Ch. 39, sec. 709m, Laws of 1975, published July 30, 1975, amended sec. 970.02 (6), Stats., by deleting that portion thereof following the . . . in the above-quoted statute.

■■■ The language of this statute is clear and unambiguous. When the statutory language is clear and unambiguous no judicial rules of construction are permitted, and the court must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning. *Recht-Goldin-Siegel Const. v. Dept. of Revenue* (1974), 64 Wis. 2d 303, 306, 219 N. W. 2d 379. "It is impermissible to apply rules of statutory construction to ascertain legislative intent when the legislation is clear on its face," *Honeywell, Inc. v. Aetna Casualty & Surety*

*Co.* (1971), 52 Wis. 2d 425, 429, 190 N. W. 2d 499. ". . . We cannot, of course, by liberal construction change the wording of a statute to mean something which was not intended by the legislature or by the plain language used." *Lukaszewicz v. Concrete Research, Inc.* (1969), 43 Wis. 2d 335, 342, 168 N. W. 2d 581. The popular or reasonable import of words furnishes the general rule for the interpretation of public laws and in construing a statute the court is not at liberty to disregard the plain clear words of the statute. *A. O. Smith Corp. v. Department of Revenue* (1969), 43 Wis. 2d 420, 429, 168 N. W. 2d 887.

The statute here under consideration says that the judge shall in all cases appoint counsel and that the judges of courts of record shall establish procedures for the appointment of counsel in that county. This is a clear and unambiguous statement of legislative intent. We see no way in which the language of the statute can be construed to authorize or permit the executive branch of the government to impose conditions or sanctions upon the judiciary in the exercise of this statutorily created obligation.

The various plans of the WCCJ place conditions precedent on the receipt of subgrants to the county which are inconsistent with and not authorized by sec. 970.02 (6), Stats. They are, therefore, invalid because they violate the statutes. We believe it reasonable to say that the hearing officer was of the opinion the plans imposed conditions on the exercise of appointment of counsel by the judges. He chose to describe the conditions as "a mild form of accountability" by the judges. Assuming such a description of the conditions to be correct, which we do not do, there is simply no language in the statute which would give the WCCJ such authority. It is not a question of whether the county's applications are inconsistent with the mandates of WCCJ state

plans. It is a question of whether the plans are violative of the state law in that they require adherence, by subgrant applicants, the absence of which results in substantial adverse consequences. It is also argued that the statute does not require direct and personal involvement of the judge in the appointment of counsel for each individual case. Of course, it does not; it requires the judges to establish procedures for the appointment of counsel. It does not support any inference that judges can be extralegislatively required to delegate that authority or to adopt any particular plan in their establishment of procedures for the appointment of counsel.

Both parties direct our attention to *State ex rel. Fitas v. Milwaukee County* (1974), 65 Wis. 2d 130, 221 N. W. 2d 902, in support of their position. We find the case to be of little assistance to the WCCJ. *Fitas* presented a situation where we found it necessary that counsel be appointed. There was no statutory provision for the appointment of counsel in the situation there present. It was, therefore, incumbent upon this court to establish a procedure for the appointment of counsel, and we designated the state public defender. In doing so, it was stated at page 133:

"We find no clear-cut delineation in the statutes of the duties of any of the parties hereto in respect to appointment or compensation of counsel."

and continuing at page 134:

"We conclude, without difficulty, that the appointment of counsel ought to be made by a judge or under the aegis of the judicial system. . . ."

The respondent in its brief, the governor in his decision on appeal, and the hearing officer, direct considerable attention to the philosophic and policy reasons supporting the plans of the WCCJ versus the statutory

method of appointment established by the legislature. Also amicus curiae briefs have been filed by the National Legal Aid and Defender Association, the Wisconsin Defender Association and the state public defender, all generally espousing policy reasons for supporting the WCCJ plans. In addition, we are referred to the ABA Standards and report of the Citizens Study Committee on Judicial Organization in its report to the governor. These policy arguments are best advanced to the legislature. The resolution of the issue before this court does not rest upon the establishment of a policy, but rather the application of a statute. We make no expression of opinion as to whether the legislature should modify or change the procedure of appointment provided by sec. 970.02 (6), Stats. Whether a state plan on a public defender program can be promulgated that will accommodate both LEEA and the existing state statute is not within the province of this court to determine.

Since we reach the conclusion that the state plans are contrary to state statutory law, it is unnecessary to reach the constitutional questions raised by the county. These go to the effect of the adoption of conditions precedent and the constitutional basis for the duty of the judiciary to appoint counsel. Only if the statute did not exist would such consideration be present. However, it does exist. Had the legislature enacted a measure whereby the duty and responsibility were placed in some person or agency other than the judiciary, then it would be necessary to determine the constitutional issue of whether, in the absence of statute, the duty is exclusive. This the legislature has not done. To go beyond the statutory language, then, to the constitutional considerations, would be to address questions not actually presented here.

Discussion of the alleged departure of the WCCJ from its own plans in approving the plans submitted by other

counties (*i.e.*, Outagamie) is also not required in view of our conclusion. Furthermore, resolution of the issue of the effect of departure from the state plan is perhaps best determined by the federal agency. It is also not necessary for us to determine whether WCCJ acted arbitrarily or capriciously in denying the application of the county for a subgrant.

*By the Court.*—Declaratory judgment granted adjudging that program 19 (1973), program 23 (1974), and program 25 (1975) of the Wisconsin Council for Criminal Justice setting forth comprehensive plans for public defender services are contrary to sec. 970.02 (6), Stats., and, therefore, invalid.

HEFFERNAN, J. (*dissenting*). The majority opinion voids the programs of the Wisconsin Council on Criminal Justice on a ground which is erroneous as a matter of law.

The holding of the majority opinion is that the Wisconsin Council on Criminal Justice program is invalid because it conflicts with sec. 970.02 (6), Stats., which the majority contends vests in the judiciary the exclusive power of appointment of counsel for indigent defendants. The majority states:

"We see no way in which the language of the statute can be construed to authorize or permit the executive branch of the government to impose conditions or sanctions upon the judiciary in the exercise of this statutorily created obligation."

The majority asserts that the Wisconsin Council on Criminal Justice is without authority to impose its own plans regarding the appointment of counsel upon the judiciary, because the judiciary cannot be required "to adopt any particular plan in their establishment of procedures for the appointment of counsel."

This holding demonstrates a lack of understanding of the nature of the Wisconsin Council on Criminal Justice

and of the facts of this case. The Wisconsin Council on Criminal Justice is not imposing mandatory conditions upon the judiciary in the exercise of the judiciary's admitted state statutory power to appoint counsel.

The Wisconsin Council on Criminal Justice is imposing conditions upon the receipt of a federal grant under the Omnibus Crime Control and Safe Streets Act, as that Act explicitly requires. 42 USCA, secs. 3733 and 3734. This difference is fundamental. Yet it is ignored by the majority. There is no requirement that any county judiciary apply for these federal funds; but when a county judiciary voluntarily chooses to seek these federal funds, as Milwaukee county and its judges have done, it must comply with the conditions established by the Wisconsin Council on Criminal Justice. The Wisconsin Council on Criminal Justice programs are not extralegislative enactments of state law, because they have no general applicability of any kind. They are federally required conditions which apply only when a party chooses to become a federal subgrant applicant.

The question here is simply whether Milwaukee county and its judges wish Wisconsin taxpayers to assume the burden of over one million dollars annually for the appointment of constitutionally required counsel or whether they wish to secure such funds from the federal government and state matching funds. If the applicant is to secure these funds, it must accept the conditions of the grant program.

Obviously, we would not expect, nor would we permit, the county of Milwaukee or the judiciary of Milwaukee to violate state laws, even for the purpose of relieving the local or state taxpayers of the burden of paying for constitutionally required counsel.

Thus, the question is not whether the government or an executive agency, Wisconsin Council on Criminal Justice, is legislating for the judiciary—for it is not—

but whether present state law permits the utilization of the offered funds under the grant conditions.

The majority opinion purports to hold that the judges would be obliged to act contrary to statute were they to operate under the grant conditions. In an effort to support its patently untenable position, the majority assumes facts not in the record. The majority states:

"It is also argued that the statute does not require direct and personal involvement of the judge in the appointment of counsel for each individual case. Of course, it does not; it requires the judges to establish procedures for the appointment of counsel. It does not support *any inference that judges can be extra-legislatively required to delegate that authority or to adopt any particular plan in their establishment of procedures for the appointment of counsel.*" (Emphasis supplied.)

This statement is contrary to the record, for it assumes that the trial judges under the plan are "required to delegate" their authority to make appointments of counsel, and it assumes that they are required to adopt "procedures."

The statement is incorrect for two reasons: (1) Under the plan all potential counsel are placed on the list only with the approval of the judges, and (2) there is no requirement that the judges do anything or adopt any procedure whatsoever. The question is: May the judges under state law *if they wish* acquiesce in the proposed grant conditions? The judiciary is not required to do anything if it does not want to. To phrase the question differently: May the Milwaukee judges on their own volition agree to the plan and its procedures?

Clearly they can. There is nothing in the plan inconsistent with the statute. Under the plan, no attorney is placed on the appointment panel without judicial approval. The plan provides that the list of private attorneys utilized must be "approved by the county's

criminal and juvenile court judges to ensure that the attorneys on it are competent to handle criminal and juvenile cases."

Thus, the provision of the statute relied upon by the majority, "The judge shall in all cases . . . appoint counsel," is satisfied. Only those attorneys appointed by the judges are permitted to serve.

The second question completely ignored by the majority, and which is of considerable importance, is whether the procedure for the appointment of counsel is within the limits of state law.

From the face of the statute, it is apparent that the legislature intended that judges might, if they wished, deviate from the practice of appointing *ad hoc* counsel for each individual defendant. The legislature stated that judges "shall establish procedures for the appointment of counsel." This provision of the statutes indeed gives the judges of Milwaukee county the right to initiate a procedure or to veto a procedure they might consider unacceptable, but it also gives them the right to ratify or accept the procedure for the appointment of counsel set forth in the proposed grant. As I view sec. 970.02 (6), Stats., then, judges retain the right to initially "appoint" counsel by placing only lawyers of their choice on the panel. This right is untouched by the plan.

The sequential utilization of lawyers in particular cases is a procedure which the judges of Milwaukee county may adopt if they wish, but an individual judge may also, under the plan, decline to utilize the lawyer next in sequence if he considers counsel inappropriate for the particular case. Judges thus retain the prerogative to reject counsel.

True, the plan requires a summary statement explaining the deviation from the sequence. This does not appear to be an onerous condition. Some trial judges have objected to this condition because they fear it might

hurt the reputation or reflect unfairly on the competency of inexperienced, but otherwise exemplary, lawyers. The position of these trial judges in this respect is understandable and may well be a valid subjective reason that would impel them to reject the plan. But nothing in the statutes would make that procedure illegal under Wisconsin law.

Thus, the plan requires judges to do nothing illegal. The approval of this plan is dependent, not on the law of Wisconsin, but on the willingness of the Milwaukee judges to accept it. They apparently feel that the requirements are personally onerous or objectionable, to the extent that the opportunity to secure over a million dollars in the financing of court operations is to be allowed to slip away. This is a choice given to them by the statutes. They may, if they wish, decline the plan's procedure in order to retain individual independence in the appointment of counsel, rather than to yield up that duty in favor of an organized procedure of the entire local bench. But they are not required by law to make that choice. There is nothing illegal about the plan.

It is the choice of Milwaukee county and the Milwaukee county judges to reject the plan and to forego the opportunity to secure approximately one million dollars in federal and state funds for the community.

I conclude that the proposed plan complies with present state law and would issue the declaratory judgment so holding.[1]

---

[1] We have foregone the opportunity to belabor the obvious—sec. 970.02 (6), Stats., is not a legislative expression of a grant of exclusive power to the judiciary to appoint counsel. It is a legislative expression of a court's duty under the constitution to protect a defendant by appointing counsel when one is not otherwise made available by friends or others. It is the defendant's right to have counsel that is constitutionally important. A court has no constitutional "right" to make an appointment, and no exclusive right to make appointments is apparent under sec. 970.02 (6).

250

I am authorized to state that Mr. Chief Justice BEIL-FUSS joins in this dissent.

DAY, J., took no part.