BARBARA NICHOLS, Secretary Department of Regulation and Licensing
You have requested an opinion on six questions concerning various provisions of chapter 163, subchapter VIII, Stats., known as Wisconsin's raffle law. You advise that you are not requesting a review of the license issued under chapter 163 to Butch's Badger Bologna Benefit, Inc., but only a response to six general question areas which have arisen as a result of recent public attention to that raffle.
I.
 DEFINITION OF "LOCAL ORGANIZATION"
You first ask for advice on the proper construction to be applied to the term "local organization" in section 163.90. That statute provides:
 Any local religious, charitable, service, fraternal or veterans organization or any organization to which contributions are deductible for federal or state income tax purposes, which has been in existence for one year immediately preceding its application for a license or which is chartered by a state or national organization which has been in existence for at least 3 years, may conduct a raffle upon receiving a license for the raffle event from the board. No other person may conduct a raffle in this state.
I conclude from the following analysis that the term "local organization" is to be construed according to its ordinary and established usage and refers to a status that is less than statewide.
In your request you state there exists no statutory definition of the word "local." It is true that chapter 163 nowhere defines the word "local" as used in that statute. However, the statutes along with other sources are replete with definitions which are instructive and helpful in reaching our conclusion. The following are some examples.
Section 340.01 (26) defines local authorities as "every county board, city council, town or village board or other local *Page 274 
agency . . . ." Section 66.945 (1)(b) defines local governmental units as meaning "cities, villages, towns and counties." And section 5.02 (9) defines local office to mean "any elective office other than a state or national office."
In addition, the Wisconsin Supreme Court has developed a definition of the word "local." The court has used this definition to distinguish between general legislation and local or special legislation. In Milwaukee County v. Isenring andothers, 109 Wis. 9, 19, 85 N.W. 131 (1901), the court stated: "An act is `general,' as contra-distinguished from and inconsistent with `local,' . . . when its operation extends to the whole state . . . ." In Monka v. State Conservation Comm., 202 Wis. 39,231 N.W. 273 (1930), the court refined the concept of general legislation to include any matter of statewide interest. In this context, then, the essential feature of a local matter is that it concerns and affects only a specific geographic area within the state.
This office has also previously examined the meaning of the word "local." In particular, in 66 Op. Att'y Gen. 335 (1977) the statutory phrase "local public defender organization" was construed. See sec. 977.03, Stats. The opinion first cited several other Wisconsin statutes and cases which indicate that "local" means something other than statewide. The opinion then concluded that to qualify as a "local" organization, an organization must embrace "less than the entire state" and benefit "one specific geographical area." 66 Op. Att'y Gen. at 336.
What emerges from these examples is the concept that the term "local organization" expresses a status that is less than that enjoyed by a statewide organization and I therefore so conclude.
I am aware that in federal commerce clause cases "local" is used to describe state laws and intrastate businesses. In Pike v.Bruce Church, Inc., 397 U.S. 137 (1970), for example, the Supreme Court described a state statute as a "local regulation."397 U.S. at 143. Other commerce clause cases indicate that a local business is one that operates within state lines. See, e.g.,Lewis v. BT Inv. Managers, Inc., 447 U.S. 27 (1980). However, the meaning of the word "local," when used in the context of federal commerce clause cases, has no bearing on the meaning to be ascribed to the word when used by the Wisconsin Legislature. The federal commerce clause cases use the word to distinguish entities that operate in interstate *Page 275 
commerce from those that operate strictly intrastate. The Wisconsin Legislature, on the other hand, clearly uses the word to distinguish entities that operate on a statewide basis from entities that are limited to a specific geographical area within the state.
You state that "[c]onsistently since passage of the raffle legislation in 1977, the department and board have uniformly interpreted the term `local . . . organization' . . . as meaning an organization organized in this state." However, it is well settled that while an interpretation placed upon a statute by the administrative agency charged with the duty of applying the statute is entitled to great weight, the interpretation is only significant where there is an ambiguity in the statute. Milwaukeev. Lindner, 98 Wis.2d 624, 297 N.W.2d 828 (1980). Because I believe the meaning of the statute under consideration to be clear and unambiguous, your prior administrative interpretation cannot overcome the plain wording of the statute.[1]
You also express concern that were I to reach the conclusion which I have in fact reached, the department "would be compelled to make arbitrary decisions on the meaning of `local.'" While I understand your concern, I do not believe that the department will necessarily face insurmountable practical difficulties in reaching such decisions in its licensing process. The Bingo Control Board can use its rule making authority under section 163.04 (3) to interpret the word "local" and provide guidance for applicants. The rule could, for example, be patterned after the United States Treasury Regulation 1.501 (c)(12)-1(b) which provides:
 An organization of a purely local character is one whose business activities are confined to a particular community, place, or district, irrespective, however, of political subdivisions. If the *Page 276 
activities of an organization are limited only by the borders of a State it cannot be considered to be purely local in character.
As previously discussed, in 66 Op. Att'y Gen. 335, 336 (1977), this office defined "local" as benefiting "one specific geographical area." Although the statutes do not contain a general definition of the word "local" they do contain definitions of particular local entities, such as local committees (section 144.445 (7)), local public bodies (section85.20 (1)(d)) and local authorities (section 340.01 (26)). Section 23.48 (1)(e) defines "local unit of government" as "the governing body of any city, town, village, county . . . ." My perusal of the statutes leads me to conclude that the board would be justified in presuming that any applicant which engages in its primary activities on a countywide or smaller area would be a "local" organization. The rule could provide that any organization which is organized on, or engages in its primary activities on, a basis larger than a county unit would have to meet the department's equivalent of the treasury regulation. This suggested approach, of course, is merely designed to provide you with a starting point for developing guidelines or a rule and is subject to further refinement based upon the experience of the department and the board in administering the statute.
Finally, before leaving question one, it should be noted that the construction of the term "local organization" in this opinion enjoys the benefit of hindsight and exhaustive research. Without the benefit of those factors, the past confusion concerning the meaning of "local" is certainly understandable. The Bingo Control Board's decisions are entitled to a presumption of validity. See
C.J.S. Public Administrative Law and Procedure § 153. Given that presumption, one might have concluded prior to this opinion that the board's decisions stood as authority for the proposition that the statutory reference to any "local organization" could include statewide organizations. In any event, the objective in issuing this opinion is to remove the cloud of uncertainty and provide guidance for future decisions.
II.
 AREA OF DISTRIBUTION OF RAFFLE TICKETS
Your second question inquires whether a licensed local organization (as now defined) may sell raffle tickets throughout the entire state. *Page 277 
Generally speaking, the laws of this state do not limit the activities of local organizations to something less than a statewide basis. Section 181.04 (9), for example, relating to the powers of non-stock corporations, specifically authorizes such organizations to carry out their operations and exercise the powers granted to them by chapter 181 "within or without this state." Section 180.04 (9) grants the same authority to business corporations. Chapter 188, relating to all fraternal societies, is replete with provisions imbuing such local posts, county councils and the like with "full corporate power to transact business in this state."
Those are some of the statutes specifically referring to thegeneralized statewide authority of the very types of organizations which may be eligible to obtain licenses to conduct raffles. You, however, have specifically asked whether raffle tickets can be sold on a statewide basis by a licensed local organization. The answer to this question is inextricably intertwined with the answer to your first question.
Section 163.02 (2) clearly indicates that the purpose of chapter 163 is, inter alia, to prevent commercialization of raffles in every respect. As previously discussed, the purpose of the legislation was to allow only small local raffles and not to allow statewide raffles. I, therefore, draw the following conclusions.
If the licensee makes random, sporadic and unorganized sales of raffle tickets in various parts of the state outside the organization's locality, these sales, because of their nature, do not convert a legitimate local raffle to a nonlocal or statewide raffle. For example, if a member of a licensed local organization in Dane County travels to Douglas County for a family reunion or on a business trip and takes a number of raffle tickets to Douglas County and sells them, this is not such an organized statewide sale as would be impermissible.
If, on the other hand, a licensed local organization engages in large-scale, organized and programed sales of raffle tickets throughout the state, then it would appear that in fact a statewide raffle is being conducted by a so-called "local" organization and would appear to violate the intent and purpose of chapter 163. In addition, if the primary or sole purpose of the organization was in fact the raising of money through an organized, programed statewide raffle, then the organization would not come within the meaning of *Page 278 
the word "local" as used in the statute and would, therefore, not be eligible for a raffle license.
III.
 PAYMENT TO THIRD PARTIES BY A RAFFLE LICENSEE FOR ADMINISTRATIVE SERVICES IN CONNECTION WITH THE CONDUCT OF A RAFFLE
Your third question is whether section 163.94 prohibits all payments to organizations or individuals in connection with the conduct of a raffle or whether the statute merely prohibits such payments if their source is the profit made from raffles.
I conclude, based upon the statutory language involved and the clear and specific statement of the legislative policy and purpose underlying chapter 163, that the statute prohibits all such payments regardless of their source.
Section 163.02 (1) states in part that "[a]ll phases of the conduct of bingo and raffles . . . should be closely controlled by appropriate laws and rules which should be strictly and uniformly enforced throughout this state."
Subsection (2) of that statute states in part that "[t]he conduct of bingo, raffles and all attendant activities . . . should be so regulated as to discourage commercialization of bingo and raffles in all forms . . . ."
I believe it to be patently clear that to allow payment of fees or salaries to any person or organization in return for services rendered in conducting or promoting a raffle would result in commercialization in clear violation of the expressed legislative purpose and policy. The statute demands this conclusion.
Section 163.94 requires in pertinent part that "[a]ll profits from raffles shall be used by the organization conducting the raffles to further the organization's purpose for existence and nosalaries, fees or profit shall be paid to any other organization or individual in connection with the operation of a raffle."
It is a maxim of statutory construction "that a law should be so construed that no word or clause shall be rendered surplusage." Mulvaney v. Tri State Truck Auto Body, Inc.,70 Wis.2d 760, 764, 235 N.W.2d 460 (1975). *Page 279 
It is also fundamental in construing statutes that "we attempt to find the common sense meaning and purpose of the words employed . . . ." State ex rel. Lynch v. Conta, 71 Wis.2d 662,677, 239 N.W.2d 313 (1976), cited with approval in 66 Op. Att'y Gen. 215, 216 (1977).
Our supreme court has stated this principle in the following manner: "`[t]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, or hidden sense . . . .'" A.O. Smith Corp. v. Department of Revenue,43 Wis.2d 420, 429, 168 N.W.2d 887 (1969), quoting from State Bankof Drummond v. Nuesse, 13 Wis.2d 74, 78, 108 N.W.2d 283 (1961).
I, therefore, conclude that the common sense, plain, obvious and rational meaning of the statute involved prohibits any such payments. Also, the words utilized by the Legislature in section 163.94 have recognized meanings in the law.
The word profit is defined as meaning "[m]ost commonly, the gross proceeds of a business transaction less the costs of the transaction; i.e., net proceeds. Excess of revenues over expenses for a transaction; sometimes used synonymously with net income for the period. Gain realized from business or investment over and above expenditures." Black's Law Dictionary 1090 (5th ed. 1979).
Were this the only word used and referred to in the statute under consideration, and the words "fees" and "salaries" were not present, the argument could be advanced that the payments about which you inquire are prohibited only if made from the net proceeds or "profits" from raffle activity.
They are present in the statute, however, and to construe them as being equivalent to the meaning of "profit" so as to prohibit such payments only if made out of profits would result in rendering the words fees and salaries surplusage. Those words do, in fact, have meanings separate and distinct from the word profit.
Black's Law Dictionary defines fees in part as a reward, wage or compensation given to a person for performance of services or something done and defines salaries in part as reward or recompense for services performed. Clearly, they are not analogous or equivalent to the word profit.
Therefore, I conclude all such payments to be prohibited regardless of source. *Page 280 
 IV. ORGANIZATION-IMPOSED LIMITATION ON DISTRIBUTION OF RAFFLE TICKETS
You next ask whether a licensed organization may: (a) require ticket purchasers to become a member of the licensed organization or pay a separate fee in order to buy raffle tickets, or (b) require ticket purchasers to buy more than one ticket as a condition to participating in the raffle.
Answering subquestion (a), I find nothing in the statutes or relevant court decisions regarding lotteries which prohibits an organization from restricting raffle ticket sales to members. However, an organization which charges prospective raffle ticket purchasers a separate fee in order to purchase tickets is in fact violating section 163.93 (2) if the stated ticket cost plus the fee combine to exceed $5.00 per ticket. I believe this conclusion to be further required by the expressed legislative policy of discouraging all types of commercialization.
In response to subquestion (b), the requirement that a prospective purchaser must buy multiple tickets flies straight in the face of the already mentioned and explicitly stated policy of the Legislature. In addition, there is implicit in your question another issue.
I am advised that some organizations have utilized a method of selling tickets wherein prospective purchasers are required to buy a sheet or block of tickets. Each "ticket" in the block or sheet is stated to cost $5.00, and there are usually twenty "tickets" to a sheet or in a block, thereby costing the buyer $100.00. However, for each sheet or block purchased the buyer receives only one entry for the eventual drawing for prizes.
If this method is utilized, such scheme clearly violates section 163.93 (2) in that it is in actuality the sheet or block of tickets which comprises "a ticket" whose cost is therefore clearly in excess of $5.00.
 V. DEFINITION OF "SERVICE ORGANIZATION"
You next ask me to define "service organization" as that phrase is used in section 163.90. You indicate in your request that the department has apparently adopted as a criterion for eligibility *Page 281 
under that section that an applicant organization must have as one of its principle purposes the benefit of the public. I agree with that conclusion.
Section 990.01 (1) establishes a general rule in construction of statutes that nontechnical words and phrases and those to which the law has attributed no peculiar meaning shall be construed according to common and approved usage.
The Random House Dictionary of the English Language, unabridged edition, defines service club to mean "any of several organizations maintained to contribute to the growth and general welfare of its members and the community." And See 73 Op. Att'y Gen. 114 (1984).
Therefore, I conclude that an organization, in order to qualify as a "service organization," must as a minimum have as one of its principle purposes the benefit, the growth and the general welfare of the community.
 VI. AMENDMENTS TO RAFFLE LICENSES
Finally, you ask if a licensed organization may amend its raffle license, together with its articles of incorporation, constitution or bylaws, to change the organization's purpose for existence.
Section 163.92 (2) provides in pertinent part that "[u]pon application by an organization licensed under this subchapter a license may be amended if the subject matter of the amendment properly and lawfully could have been included in the original license" and that "[a]n amendment may revise any of the information on the original license."
I conclude that so long as the organization remains fully eligible for a raffle license after the amendments, there is no question that the statute specifically allows such an amendment.
You also ask whether an organization that amends its raffle license to reflect a change in stated purpose during the course of selling raffle tickets is obligated to notify ticket purchasers of the change in stated purpose.
Section 100.18 (1) prohibits untrue, deceptive or misleading statements in advertising. If the promotional materials for the raffle state that the proceeds are going to be used for a certain purpose *Page 282 
and that stated purpose is later changed by an amendment to the raffle license and the advertising for the sale of the raffle tickets remains unchanged, such advertising could then potentially violate the relevant provisions of section 100.18. Therefore, promoters of raffles should notify purchasers and prospective purchasers of raffle tickets of the change in use to which the proceeds would be put.
JDJ:JCM
[1] Although it is unnecessary to resort to legislative history because the statute is clear and unambiguous on its face, it is noteworthy that the Legislature, in inserting the word "local" into the state raffle law, appears to have intended the word to have its ordinary and common meaning rather than the peculiar meaning adopted by the board. The specific language of section 163.90 is taken directly from the constitutional amendment which modified Wisconsin's strict constitutional prohibition against lotteries. See Wis. Const. art. IV, § 24. The drafting records show that the word local was not contained in the first draft of the amendment. The word was added by special request of State Representative Gunderson, the legislator who had requested the original draft. This drafting request expressly states that "local" was added because Representative Gunderson did not "want statewide or national organizations to be able to hold raffles or receive profits from them."
 *Page 1